TOUMA v. HOLLY LUMBER & SUPPLY CO., INC.

1. APPEAL AND ERROR—EXCHANGE OF PROPERTY—FINDING OF COURT —FRAUD—RECORD.

> In suit to set aside transaction whereby plaintiffs exchanged the equity which they possessed for defendant lumber company's equity in a hotel property, finding of trial court that representations *as to amount of indebtedness against* hotel property were made as claimed by plaintiffs *held,* supported by the record.

2. SAME—FRAUD—BURDEN OF PROOF—EVIDENCE.

> In suit to set aside exchange of properties defendant's burden of proof as to fraud claimed to have been committed by plaintiffs *held,* not sustained on review of case *de novo.*

3. EXCHANGE OF PROPERTY—TENDER OF RESTORATION—EVIDENCE.

> In suit to set aside exchange of properties because of alleged fraudulent representation as to amount of mortgage against property, tender of restoration, if prerequisite to such suit, *held,* to have been made under record presented.

Fraud and misrepresentation permitting restitution, see Restatement, Restitution, § 8.

As to incomplete representations constituting fraudulent misrepresentations, see 1 Restatement, Torts, § 529.

Offer of restoration as a condition to restitution, see Restatement, Restitution, § 65.

Laches as a defense in suit for restitution, see Restatement, Restitution, § 148.

Accounting by party demanding restitution, see Restatement, Restitution, § 159.

4. Cancellation of Instruments—Fraud—Delay in Bringing Suit.

>  Plaintiffs who brought suit to set aside deeds involved in exchange of property within two months after discovery of alleged fraud on part of an officer of defendant company and after having been given assurance by such officer that he would see plaintiffs would not lose on the transaction *held,* to have instituted suit with sufficient promptness.

5. Banks and Banking—Evidence of Knowledge of Fraud—Discounted Note.

>  In suit to set aside transaction whereby plaintiffs exchanged an interest in realty for defendant lumber company's equity in hotel property and loaned plaintiffs, for purpose of repairing it, $1,000 on a note which was discounted at a bank in which lumber company's president was also an officer, cancellation of the note *held,* error where such officer who had negotiated the deal was not present at bank when note was discounted, there being insufficient evidence to impute knowledge of the fraud to the bank.

6. Exchange of Property—Setting Aside Deeds—Cancellation of Notes—Equity.

>  In suit to set aside transaction whereby plaintiffs and defendant lumber company exchanged interests in real estate and latter loaned former money on certain notes, deeds involved are set aside and notes given by plaintiffs are cancelled upon plaintiffs' payment to defendant of amount of rent collected plus amount defendant had expended in insurance and mortgage payments on plaintiffs' property.

Appeal from St. Clair; George (Fred W.), J. Submitted April 5, 1940. (Docket No. 57, Calendar No. 41,063.) Decided June 4, 1940.

Bill by Joseph M. Touma and wife against Holly Lumber & Supply Company, Inc., a Michigan corporation, and First State & Savings Bank, Holly, Michigan, a Michigan banking corporation, to set aside a deed and cancel notes. Cross bill by defendants for an accounting. Decree for plaintiffs. Defendants appeal. Reversed as to defendant bank, and modified and affirmed as to defendant lumber company.

*Eugene Bergsman,* for plaintiffs.

*LeRoy W. Belanger,* for defendants.

CHANDLER, J. Prior to July 6, 1938, the Holly Lumber & Supply Company was the owner of a certain parcel of real estate, known as the Argentine Hotel. A mortgage against the property held by the Fenton State Bank had been foreclosed, the expiration of the redemption period having been extended to November 1, 1938, upon payment of monthly rental of $50, by a decree entered in accordance with the provisions of the mortgage moratorium statute. See Act No. 98, Pub. Acts 1933, as amended.

Plaintiff, Joseph M. Touma, was the owner of property in the city of Port Huron, which had been sold on land contract, subject to a mortgage.

On July 5, 1938, one Jarou, a real estate agent, stated to Mr. Frank M. Haddon, president of the lumber company, that he had a prospective purchaser for the hotel property. On the following day, the two drove to Port Huron to interview plaintiff. As a result of negotiations which ensued, plaintiff deeded the property owned by him in Port Huron to the lumber company and the latter deeded the hotel property to him, the deed warranting that the same was subject to a mortgage which did not exceed in amount the sum of $5,277. Also, as a part of the consideration, plaintiff and his wife executed their promissory note to the lumber company in the sum of $2,000.

The hotel was in a state of disrepair and the lumber company agreed to loan plaintiffs $1,000 to make necessary repairs thereto. In fulfillment of this agreement, plaintiffs executed a second note in the amount of $1,000, payable to the lumber company, the same being discounted with the defendant bank, plaintiff receiving a bank money order which he indorsed and cashed.

The next payment under the mortgage moratorium decree became due in August. To meet this payment, plaintiffs borrowed $50 more from the lumber company and gave their promissory note therefor. The money was tendered to the bank and refused, plaintiff being instructed that the payment had to be made to the Reconstruction Finance Corporation. He then went to Detroit to discuss the matter with officials of said corporation and claims that he there learned for the first time that the mortgage had been foreclosed and that the redemption period expired on November 1st. He also claims that he there discovered for the first time that the amount required to redeem was over $5,900, rather than $5,277, which he testified was the amount Mr. Haddon represented to be due under the mortgage at the time of the sale.

Plaintiff claims that upon making the discovery he went to Mr. Haddon and the two went to the offices of the Reconstruction Finance Corporation in Detroit to negotiate relative to a refinancing of the mortgage. He testified:

"Q. And what took place, anything with the R. F. C.?

"A. He asked me to make that payment then. I said, no, I will go and check up more on it later, and I didn't make any payment and I came back with the $50 of my payment and when I got outside I said, Mr. Haddon, one thing mortgage was supposed to be $5,277 and some odd dollars, now near $6,000, as I recall the amount, $5,922 and something, near $700 difference. And also mortgage of $50 a month and there is no such thing as mortgage and I am just paying rent and on November 1st I wouldn't have the property. Now, let's start from the beginning. Now, I don't want this deal at all. You take your stuff and give me my stuff and we'll call it off and that's all there is to it. He said, no use to do that, Mr. Touma, I will see when the time comes,—before the time, the

legislature of the State talking about giving an extension on those moratorium on the mortgages and when they do that, that will give us more time and we will see matters arranged before we get to that time. I don't need to go any further and I will see we can take care of it without causing you any injury at all. So on those promises I went back with Mr. Haddon and came back to Port Huron.''

He further testified that Mr. Haddon promised that he would see that plaintiff didn't lose on the deal and that the lumber company would refinance the mortgage if necessary.

The indebtedness was never refinanced, and on October 4, 1938, the bill of complaint herein was filed, alleging fraud, and praying that the deed of the Port Huron property from plaintiff to the lumber company be set aside; that the notes executed by plaintiffs be returned to them and for other relief.

The lumber company answered, denying the material allegations of the bill, and filed a cross bill which alleged fraud on the part of plaintiffs, praying for an affirmance of the transaction and an accounting. The cross bill filed by the defendant bank prays for an accounting by plaintiffs as to the amount due on the $1,000 note which was discounted at said bank.

The decree entered by the trial court set aside the deed to the Port Huron property and cancelled the notes held by defendants against plaintiffs. This appeal resulted.

Relative to the question of alleged fraud perpetrated by the lumber company in connection with the transaction, we have recited the substantial facts and the claims of plaintiffs in regard thereto. The trial court found as a matter of fact that representations plaintiffs claim the lumber company to have made did exist, and the record presents nothing which should cause us to disturb the finding so made.

Defendants seek to apply the maxim, ''He who

seeks equity must come into court with clean hands,'' claiming that plaintiffs were guilty of false and fraudulent representations in connection with the trade in that Mr. Touma represented that the mortgage covering the Port Huron property, which he deeded to the lumber company, bore interest at the rate of six per cent., whereas in fact it was seven per cent.; that plaintiff further represented that he needed to borrow $1,000 to make repairs on the hotel, which the lumber company loaned to him for this purpose, and that he used the same to pay his personal debts; and that he borrowed $50, representing that he needed the sum to make a payment on the mortgage moratorium but which payment he never made after receiving the money for this purpose.

Reviewing the case *de novo,* we conclude that defendants have failed to sustain the burden of proof as to fraud claimed to have been committed by plaintiffs.

Defendants further claim that restoration or tender by plaintiffs before bringing suit was a prerequisite to the institution of the proceedings. In *Mettetal* v. *Hall,* 288 Mich. 200, 204, we said:

"Restoration or tender before suit is wholly superfluous as a prerequisite to a suit in equity for rescission or cancellation."

In any event, plaintiff did, according to his claim, make such a tender prior to bringing suit, as is revealed by his testimony hereinbefore quoted, wherein he told Mr. Haddon, "Now, I don't want this deal at all. You take your stuff and give me my stuff and we'll call it off and that's all there is to it."

Defendants submit that plaintiffs are barred from relief because they failed to complain and institute suit for rescission with sufficient promptness after discovery of the fraud. Mr. Touma discovered the true situation with regard to the condition of the

mortgage in August, 1938. However, he was given assurance by Mr. Haddon at that time that the lumber company would see that he did not lose on the transaction and that the company would refinance the mortgage if necessary. In view of these circumstances, we hold that plaintiffs, in filing the bill of complaint on October 4, 1938, acted with sufficient promptness to protect their rights.

Relative to the relief granted, it is claimed that the trial court was in error in cancelling the $1,000 note which was discounted at the defendant bank, as the bank was not a party to the fraud. At the time the note was given, Mr. T. Roy Hadley was an officer of the lumber company and an officer of the bank. He took no part in the deal with Mr. Touma, except that he signed the deed of the hotel property as an officer of the lumber company. He was not present when the note was discounted at the bank. These facts are not sufficient to impute knowledge of the fraudulent transaction to the bank. The court therefore erred in cancelling this instrument.

The deed given by plaintiffs to the lumber company for the Port Huron property should be set aside and vacated; the notes for $2,000 and $50 held by the lumber company cancelled, upon payment by plaintiffs of a sum representing the amount collected by them as rent on the hotel, plus the amount expended by the lumber company for insurance and payments on the mortgage covering the Port Huron property.

The decree is reversed as to the bank, and modified as to the lumber company in accordance with this opinion. The bank shall recover its costs against plaintiffs, and plaintiffs shall recover their costs against the lumber company.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.